THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CEASAR RODRIGUEZ, Defendant-Appellant.

Second District   No. 2—93—1395

Opinion filed November 2, 1995.

34

McLAREN, P.J., dissenting.

G. Joseph Weller, Paul Alexander Rogers, and Colleen M. Chang, all of State Appellate Defender's Office, of Elgin, for appellant.

Roger T. Russell, State's Attorney, of Belvidere (William L. Browers and Mary Beth Burns, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DOYLE delivered the opinion of the court:

Defendant, Ceasar Rodriguez, argues in this appeal that he was improperly transferred to adult court in the circuit court of Boone County.

Defendant was found guilty in a stipulated bench trial of the offense of unlawful delivery of a controlled substance, LSD (720 ILCS 570/401(a)(7)(A)(ii) (West 1992)), and was sentenced to six years' imprisonment. Originally, the offense had been charged as one count of a five-count petition for adjudication of wardship. The juvenile petition had contained two counts of unlawful delivery of a controlled substance and three counts of unlawful delivery of cannabis. During the proceedings on the five-count petition, the State filed a petition, pursuant to section 5—4(3)(a) of the Juvenile Court Act of 1987 (the Act) (705 ILCS 405/5—4(3)(a) (West 1992)), requesting the trial court to allow defendant to be prosecuted as an adult.

Prior to a hearing on the petition for discretionary transfer to adult criminal prosecution, the State filed an amended petition, adding an allegation that, under section 5—4(7)(a) of the Act (705 ILCS 405/5—4(7)(a) (West 1992)), defendant must be prosecuted as an adult because he was at least 15 years old, had violated section 401(a)(7)(A)(ii) of the Illinois Controlled Substances Act (720 ILCS 570/401(a)(7)(A)(ii) (West 1992)), and had committed the violation while on public property within 1,000 feet of the real property comprising a school. Following a hearing, the trial court determined that the two counts of unlawful delivery of a controlled substance must be tried in adult court. Defendant was then charged as an adult by information with these two counts.

By agreement of the parties, one of these counts, count II, was sent back to juvenile court. Defendant proceeded to a stipulated bench trial in adult court on the other count, was convicted thereof, was sentenced to six years' imprisonment, and was ordered to pay a statutory assessment of $3,000. Count II was reinstated within the juvenile case. The court accepted defendant's admission to this count, adjudicated him to be delinquent, and made him a ward of the court. The court then terminated the wardship because defendant had been sentenced to imprisonment on count I. The three counts of the original petition pertaining to unlawful delivery of cannabis were dismissed.

Defendant filed a motion to vacate judgment of conviction, which was denied. Defendant then filed a timely appeal.

On appeal, defendant contends that: (1) he should not have been prosecuted as an adult because the gas station parking lot where he sold LSD did not constitute a public way as required for adult prosecution under section 5—4(7)(a) of the Juvenile Court Act; (2) the amended petition under which defendant's case was transferred to adult court was untimely filed and should have been dismissed; and (3) defendant should be given credit against his statutory assessment for each day that he was in custody.

■ Defendant first contends that the present case should not have been "automatically transferred" to the adult criminal court because the gas station parking lot, where the offense occurred, does not constitute a public way. Under section 5—4(7)(a) of the Act, a minor is subject to criminal prosecution if charged with an offense under section 401 of the Illinois Controlled Substances Act while "on a public way within 1,000 feet of the real property comprising any school, regardless of the time of day or the time of year." (705 ILCS 405/5—4(7)(a) (West 1992).) The facts here were undisputed that defendant's illegal sale of LSD occurred in a gas station parking lot that was located within 1,000 feet of a school.

Defendant maintains that, because the parking lot was on property owned by the gas station, it could not be considered a public way. To support his position, defendant first argues that the gas station parking lot does not "fit within the plain and ordinary meaning of the term public way." Thus far, the "public way" language of section 5—4(7)(a) of the Act has not been construed by the courts.

As defendant points out, no definition of "public way" appears in Black's Law Dictionary. Rather, behind the entry, the reader is directed to: "*See* Highway (*Public highway*)." (Black's Law Dictionary 1233 (6th ed. 1990).) In Webster's Third New International Dictionary "public way" is defined as:

"any passageway (as an alley, road, highway, boulevard, turnpike) or part thereof (as a bridge) open as of right to the public and designed for travel by vehicle, on foot, or in a manner limited by statute (as by excluding pedestrians or commercial vehicles)." Webster's Third New International Dictionary 1836 (1991).

In the court below, defendant argued that the plain and ordinary meaning of "public way" was, simply, "public thoroughfare." On appeal, defendant has abandoned defining the phrase "public way" and instead defines "public" and "way" separately. Combining the two separate definitions, defendant concludes that the phrase means "a way that is both open to the general public for unlimited use and maintained by some public entity."

The State contends here, as it did in the trial court, that the "public way" language of section 5—4(7)(a) of the Act should be analogized to the "public way" language of the aggravated battery statute (720 ILCS 5/12—4(b)(8) (West 1992)). In the latter statute the language has been interpreted to mean areas frequented by the public.

After hearing arguments pertaining to the definition of "public way," the trial court determined that the purpose of the legislature in enacting the statute in question was to create a safe zone around schools. The court concluded that, to accomplish this purpose, the legislature intended that "public way" should refer to any area where the public is invited to frequent. Because children might go to the gas station to use the rest room, to buy something, or, in some instances, to meet their parents, the court found that the gas station parking lot constituted an area where the public is invited. Therefore, the offense with which defendant was charged occurred on a public way, and he was subject to mandatory transfer to the adult criminal system. In reaching this decision, the court considered cases which had interpreted the term "public way" as it appears in the aggravated battery statute.

The aggravated battery statute states, in relevant part:

"(b) A person who, in committing a battery, commits aggravated battery if he:

* * *

(8) Is, or the person battered is, on or about a public way, public property or public place of accommodation or amusement[.]" (720 ILCS 5/12—4(b)(8) (West 1992).)

Defendant maintains that this court should decline to follow the interpretation given the aggravated battery statute because the language "on or about a public way" in the statute is much broader than the language "on a public way" which appears in section 5—4(7)(a) of the Juvenile Court Act.

Additionally, defendant asserts that because the language of the aggravated battery statute is not limited to "a public way," as is section 5—4(7)(a), but includes all of the following places: "public way, public property or public place of accommodation or amusement," cases interpreting the language of the aggravated battery statute are not relevant to an interpretation of the statute in question. To illustrate this point, defendant relies on four cases dealing with aggravated batteries occurring in parking lots. In our opinion, however, the cases support both the State's and the lower court's positions that cases interpreting the language of the aggravated battery statute are both beneficial and relevant to interpreting the "public way" language of section 5—4(7)(a).

The first of these cases, *People v. Ward* (1981), 95 Ill. App. 3d 283, was decided by this court. *Ward* dealt with a battery which occurred in a Holiday Inn parking lot. Defendant was charged with aggravated battery based on the situs of the alleged offense. Defendant challenged the charging document, arguing that the State's amendment of the information to state that the offense occurred on a "public place of accommodation" rather than on "public property" amounted to a fundamental, substantial defect, which precluded amendment of the information. This court determined that the defect in the information was formal and therefore amendable pursuant to section 111—5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111—5 (West 1992)). In reaching this determination, we stated:

> "As we interpret this statutory language, the essential allegation for a charge under section 12—4(b)(8) is that the battery occurred in a public area. Whether the property was actually publicly owned and, therefore, 'public property' rather than a privately owned 'public place of accommodation' is irrelevant; *what is significant is that the alleged offense occurred in an area accessible to the public.*" (Emphasis added.) *Ward*, 95 Ill. App. 3d at 287-88.

In two other cases, each of which involved a battery that occurred in an apartment building parking lot, the court relied on this court's language in *Ward* to find that the parking lots constituted public ways. (See *People v. Williams* (1987), 161 Ill. App. 3d 613; *People v. Pugh* (1987), 162 Ill. App. 3d 1030.) In finding that defendant had been proved guilty of aggravated battery, the court in *Williams* emphasized our determination that what is significant in an aggravated battery case "is that the alleged offense occurred in an area accessible to the public." (*Ward*, 95 Ill. App. 3d at 287-88.) Because the evidence showed the parking lot in question was a place frequented by the public, the court determined that it constituted a public way under the aggravated battery statute. (*Williams*, 161 Ill.

App. 3d at 620.) In *Pugh*, the court again relied on *Ward* and our definition of "public way" as an area accessible to the public to hold that an apartment building parking lot was a public way within the meaning of the aggravated battery statute. *Pugh*, 162 Ill. App. 3d at 1034-35.

In the last of the parking lot cases, *People v. Lee* (1987), 158 Ill. App. 3d 1032, the battery occurred in a parking lot outside a convenience store. As in *Williams* and *Pugh*, the court in *Lee* also relied on the language in *Ward* to find that the parking lot constituted a situs within the meaning of the aggravated battery statute. Although the court in *Lee* classified the parking lot outside the convenience store as "a public place of accommodation," it reached this result based on our reasoning in *Ward* regarding the intent of the legislature in including the language "public way, public property or public place of accommodation or amusement" in the statute. The court in *Lee* explained that this court had reasoned that the language used expressed the legislature's belief that a battery committed "in an area open to the public" constituted a more serious threat to the community than a battery committed elsewhere. (*Lee*, 158 Ill. App. 3d at 1036.) Agreeing with our reasoning, the court concluded that this court's interpretation of the statutory language constituted a commonsense approach in light of the evil to be remedied. As stated in *Ward* and quoted in *Lee*, what is significant for a charge of aggravated battery " 'is that the alleged offense occurred in an area accessible to the public.' " *Lee*, 158 Ill. App. 3d at 1035, quoting *Ward*, 95 Ill. App. 3d at 288.

■ While the aggravated battery statute includes more than "public way" in its list of public places, the cases discussed above illustrate that the key factor in determining whether an aggravated battery occurred is that the offense occurred in an area or place accessible to the public. Here, too, we believe the accessibility of a place to the public is the key factor in deciding whether an offense occurred under the "public way" language of the statute in question. Given the apparent reason and necessity for section 5—4(7)(a), the evils sought to be remedied by it, and the purpose to be achieved, *i.e.*, to protect children from drug dealers by making it illegal for offenders to be near school areas and by imposing a stiffer penalty on those who would invade this zone of safety, we cannot believe the legislature by its use of the language "public way" intended to curtail the crimes of only those offenders who choose to position themselves on a public thoroughfare maintained by a public entity, as defendant asserts. Relying on our decision in *Ward*, we find that regardless of the fact that section 5—4(7)(a) of the Juvenile Court Act, in describing the

situs of an offense under section 401 of the Illinois Controlled Substances Act, uses only the words "on a public way" within 1,000 feet of school grounds, what is significant in determining whether section 5—4(7)(a) applies to an offender is that the offense occurred in an area accessible to the public.

The court's role in construing statutes is to ascertain the legislative intent and give it effect. (*People v. Scharlau* (1990), 141 Ill. 2d 180, 192.) To aid in accomplishing this, we may consider not only the language used in a statute but also the reason and necessity for the law, the evils sought to be remedied, and the purpose to be achieved. (*Stewart v. Industrial Comm'n* (1987), 115 Ill. 2d 337, 341.) Normally, courts are required to interpret words in a statute according to their plain and ordinary meaning unless this would defeat the legislative intent. *Scharlau*, 141 Ill. 2d at 193.

■ Here, we agree with the trial judge's conclusion that the gas station parking lot constituted a place that children might frequent to use the rest room or to buy something at the gas station. Additionally, they might use the parking lot as a meeting place. It was a place accessible to the public. To give the words "public way" the meaning defendant suggests would defeat the legislative intent of the statute. Accordingly, we find that section 5—4(7)(a) of the Act applied to defendant and that the court correctly determined that defendant was not entitled to the protection of the Juvenile Court Act.

Defendant next contends that, if this court determines that the transaction in question occurred on a public way and, therefore, mandated that defendant be tried as an adult, the amended petition alleging such an action was untimely filed and should have been dismissed. Defendant maintains that the amended petition should have been filed after the order for detention but before the 10-day speedy adjudication requirement of the Juvenile Court Act (705 ILCS 405/5—14(b)(2) (West 1992)) had expired. Because more than 10 days had transpired between the date when defendant was detained and the date when the State filed the amended petition, defendant argues the petition should have been dismissed as untimely.

The amended petition contained the allegation that the LSD transaction on a public way mandated that defendant be prosecuted as an adult. Therefore, the State argues, the speedy adjudication requirement of the Act never applied to the LSD offense, and the trial court's refusal to dismiss the amended petition on this basis was proper. We agree.

■ The Act provides in relevant part:
   "(7)(a) The definition of delinquent minor under Section 5—3 of this Act shall not apply to any minor who at the time of an of-

fense was at least 15 years of age and who is charged with an offense under Section 401 of the Illinois Controlled Substances Act while *** on a public way within 1,000 feet of the real property comprising any school, regardless of the time of day or the time of year ***. *** These charges and all other charges arising out of the same incident shall be prosecuted under the Illinois Controlled Substances Act.

(b) If before trial or plea an information or indictment is filed that does not charge an offense specified in paragraph (a) of this subsection (7), the State's Attorney may proceed on the lesser charge or charges, but only under the other provisions of this Act, unless before trial the minor defendant knowingly and with advice of counsel waives, in writing, his or her right to have the matter proceed in Juvenile Court. If before trial or plea an information or indictment is filed that includes one or more charges specified in paragraph (a) of this subsection (7) and additional charges that are not specified in that paragraph, all of the charges arising out of the same incident shall be prosecuted under the Illinois Controlled Substances Act or the Criminal Code of 1961." 705 ILCS 405/5—4(7)(a), (b) (West 1992).

As the State correctly points out, provisions of sections 5—4(7)(a) and (b) establish that the legislature did not intend that the protection of the Act should be extended to minors at least 15 years of age who sold LSD on a public way within 1,000 feet of a school. In fact, the section mandates criminal prosecution of minors who commit offenses under these circumstances. Given the clear direction of the statute that such minors are to be prosecuted in the adult criminal system, we find that the 10-day speedy adjudication provision of the Act (705 ILCS 405/5—14(b)(2) (West 1992)) never applied to defendant. For that provision to apply, defendant had to be alleged to be delinquent. Under section 5—4(7)(a), however, a minor committing an offense under section 401 of the Illinois Controlled Substances Act (720 ILCS 570/401 (West 1992)), like defendant here, could not be considered a delinquent minor.

Therefore, the State's amended petition, filed two months after defendant's detention, could not be deemed untimely because of the State's failure to file it within the 10-day window provided in section 5—14(b)(2) of the Act since the provision did not apply. Accordingly, the trial court's refusal to dismiss the amended petition was proper.

We note that, because defendant's LSD offense mandated that he be tried as an adult, the speedy trial provision of the Code of Criminal Procedure of 1963 (725 ILCS 5/103—5(a) (West 1992)) applied. The record establishes, however, that defendant was brought to trial on the LSD charge within the 120-day period required by the speedy trial statute. .

■ In his final contention defendant argues that he was entitled to a credit of $5 per day for each day that he was in custody against his statutory assessment of $3,000. The State does not dispute defendant's right to the credit.

A defendant is entitled to a $5-a-day credit for each day incarcerated on a bailable offense when he does not supply bail (725 ILCS 5/110—14 (West 1992)), and this credit is applicable to a statutory drug offense assessment (*People v. Reed* (1994), 255 Ill. App. 3d 949, 951). Because defendant spent 112 days in custody on bailable charges, we find that he is entitled to a credit of $560 against his $3,000 statutory assessment.

Accordingly, defendant's drug assessment is reduced by $560. The remainder of the judgment of the circuit court of Boone County is affirmed.

Affirmed as modified.

HUTCHINSON, J., concurs.

PRESIDING JUSTICE McLAREN, dissenting:
While I recognize the importance of protecting our children from drug dealers, this court is not at liberty to ignore well-established tenets of statutory construction. The majority correctly notes that, when construing statutes, we must "ascertain legislative intent and give it effect." (*People v. Scharlau* (1990), 141 Ill. 2d 180, 192.) However, I disagree with the majority's method of ascertaining the legislative intent of section 5—4(7)(a) of the Juvenile Court Act (705 ILCS 405/5—4(7)(a) (West 1994)). Our supreme court tells us that the first step in ascertaining the meaning of a statute is to look to the language of the statute, which is the *best* indication of the legislature's intent. (*First of America Bank v. Netsch* (1995), 166 Ill. 2d 165, 181.) If the statutory language is clear, our inquiry is complete, and we must give the language effect without resorting to other aids of construction. *Illinois Graphics Co. v. Nickum* (1994), 159 Ill. 2d 469, 479.

The minor in the instant case was charged with violating the Illinois Controlled Substances Act because he allegedly sold a controlled substance at a gas station located within 1,000 feet of a school. The Juvenile Court Act provides that, when a minor commits an offense under section 401 of the Illinois Controlled Substances Act while "on a public way" within 1,000 feet of a school, the minor will be subject to criminal prosecution. (705 ILCS 405/5—4(7)(a) (West 1994).) Therefore, we must determine whether a gas station is a "pub-

lic way." Our supreme court tells us that a "public way" is a "public highway." (*Mammina v. Alexander Auto Service Co.* (1928), 333 Ill. 158, 167 ("[t]he term 'public highway' includes public ways of every description"); see also Black's Law Dictionary 1233 (6th ed. 1990) (the entry under "public way" states, "*See* Highway (*Public highway*)").) Our supreme court defines "public highway" as a "passageway, road or street which every citizen has a right to use," and states, "[t]he fundamental idea of a highway is that it is a place for uninterrupted passage by men, animals or vehicles." (*Mammina*, 333 Ill. at 167.) Moreover, in interpreting the definition of "highway" under the Illinois Vehicle Code, this court has focused on whether the alleged highway is publicly maintained. (*People v. Culbertson* (1994), 258 Ill. App. 3d 294, 296-97; 625 ILCS 5/1—126 (West 1994).) Because a privately owned gas station is not a passageway, road, or street, nor maintained by the public, I conclude that a gas station is not a "public way."

The majority ignores the plain meaning of the clear and unambiguous language of the Juvenile Court Act and erroneously expands the scope of the provision at issue. The majority applies case law which interprets the broader language of the aggravated battery provision to the less inclusive language of the Juvenile Court Act. The majority cites *People v. Pugh* (1987), 162 Ill. App. 3d 1030, *People v. Williams* (1987), 161 Ill. App. 3d 613, and *People v. Ward* (1981), 95 Ill. App. 3d 283, to support its interpretation. However, the courts in these cases construed the meaning of "public way, public property or public place of accommodation or amusement." I agree that a privately maintained parking lot, for purposes of the aggravated battery statute, is properly considered a "public place of accommodation." (*People v. Lee* (1987), 158 Ill. App. 3d 1032, 1036; but see *People v. Pennington* (1988), 172 Ill. App. 3d 641, 644-45 (erroneously citing *Lee* for the proposition that a parking lot is a "public way").) However, in the present case, this court is asked to interpret the language of the Juvenile Court Act, not the more expansive language of the aggravated battery statute. Thus, the task before us is only to interpret the meaning of "public way," for the legislature limited the Juvenile Court Act to this term (705 ILCS 405/5—4(7)(a) (West 1994)). Our task is *not* to determine whether a gas station is a "public way, public property or *public place of accommodation* or amusement," as the majority does by analogizing this case to cases involving aggravated battery. (Emphasis added.) (720 ILCS 5/12—4(b)(8) (West 1994) (the aggravated battery statute).) In addition, the majority's method of statutory construction violates the maxim "*inclusio unius est exclusio alterius*," that the mention of one thing implies the exclu-

sion of another. (See *Rochelle Disposal Service, Inc. v. Pollution Control Board* (1994), 266 Ill. App. 3d 192, 201 ("the inclusion of one is the exclusion of the other"); *Bank of Waukegan v. Kischer* (1993), 246 Ill. App. 3d 616, 620.) The legislature was aware of the broader language in the aggravated battery statute, yet chose to use less inclusive language in the Juvenile Court Act. Our legislature specifically excluded the terms "public property," "public place of accommodation," and "public amusement" from the Juvenile Court Act. This court should not insert words into an enactment (*Auto Owners Insurance v. Berkshire* (1992), 225 Ill. App. 3d 695, 698) and should, instead, enforce the clear terms of the Juvenile Court Act as written (*Illinois Graphics Co.*, 159 Ill. 2d at 479).

I can readily accept that the legislature, by using the term "public way," proscribed streets, alleys, roads, parkways, highways, and sidewalks as places where drug trafficking would result in stiffer penalties. If the legislature desired to include public property, public accommodation, or public amusement in the proscription in the Juvenile Court Act, it could easily have inserted these terms. The legislature did not do so. This court may not do so. Therefore, I dissent.